UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

                                    Hon. Gerald E. Rosen

-vs-

                                      No. 09-CR-20559-02

D-2   KANDIA N. MILTON,

                                    Sentencing Date: August 16, 2010

              Defendant.

_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**
**<u>AS TO DEFENDANT KANDIA N. MILTON</u>**

The government submits the following memorandum in connection with the

sentencing of defendant Kandia N. Milton on August 16, 2010.  The government

recommends that Mr. Milton be sentenced to a term in prison not more than 18 to

23 months, along with a two year period of supervised release.  As part of this

recommendation, the government has moved separately for a downward departure

from the applicable sentencing guidelines range of imprisonment for Mr. Milton

because of his substantial assistance in the investigation of other criminal activity.

The reasons for this recommendation are set forth below.

1

## DISCUSSION

As the Court is aware, Title 18, United States Code, Section 3553(a) requires the Court to impose a sentence which is sufficient but not greater than necessary to comply with the purposes set forth in that section. The government will summarize the statutory factors most applicable to this case.

I.     **Statutory Factors**

A. **The Nature and Circumstances of the Offense**

Mr. Milton's plea agreement contains a statement of facts applicable to him. In late 2006, Milton agreed to help Jerry Rivers with the sale of the city-owned Camp Brighton/Detroit Recreation Camp to a non-profit entity. At the time, Milton was the city council liaison for the then-mayor of Detroit and Rivers was a Detroit police officer. Rivers said that if the city approved the sale, he would give Milton part of the $50,000 commission he expected to receive from the non-profit entity. Thereafter, at the request of city council, Milton met with associates of the non-profit entity and collected information regarding its ability to pay the proposed sale price. He also spoke at city council sessions about the proposed sale. At the recommendation of the city administration, including Milton, the city council approved the sale of Camp Brighton to the non-profit entity for $3.5 million in June 2007.

After the sale closed, Rivers recruited a middleman to accept his commission from the non-profit entity because Mr. Milton and his brother DeDan Milton, who also was involved, could not take the money directly given their positions as City of Detroit officials.  The non-profit entity wrote a check to the middleman's company for $50,000, which the middleman deposited into his business bank account.  In order to conceal further the Milton brothers' role in the sale and also to prevent issuance of a currency transaction report to the IRS, the middleman broke the non-profit entity proceeds into multiple payments with $19,000 going to Milton, consisting of three checks to an associate of Milton for $4,500 and $5,000, and one check to Milton for $5,000.  Milton gave the middleman $1,000 from Milton's original $20,000 share for his assistance.

Although not part of his guilty plea, Mr. Milton also advised the government of another bribery scheme.  In 2006, Rivers asked Milton and his brother DeDan to help Rivers with the sale of the City of Detroit's 8th Precinct police station to a developer.  In February 2007, after the sale closed, Rivers gave the Miltons each $6,250 in cash for their help.

Mr. Milton also has advised the government that he received cash payments from a city contractor for his help securing a services contract with the city.

**B.  History and Characteristics of the Defendant**

Mr. Milton had no criminal record before he pleaded guilty to the offense

described above.  Since being contacted by law enforcement, he has accepted

responsibility for his role in the misconduct and admitted other misconduct

previously unknown to the government.

By all accounts, for most of Mr. Milton's career in city government, he was

a thoughtful, diligent public servant respected by his colleagues and the public.

Unfortunately, during his last two years in public service, from about 2006 to

2008, he compromised those standards, accepting payments for help in three

different transactions involving city business.  Since pleading guilty, Milton

appears genuinely remorseful about his participation in this misconduct.  That

remorse does not stem solely from being caught or from the prospect of going to

prison.  Rather, Milton seems truly ashamed by his misconduct, realizing that he

did not live up to his obligations as a public servant.

**C.     Seriousness of the Offense, Promoting Respect for the Law,
        Providing Just Punishment, and Affording Adequate Deterrence**

Mr. Milton's offense is serious.  As a city official, he knew he could not

accept money in exchange for his official assistance.  He claims that he would

have supported the sale of Camp Brighton regardless of being paid for it.  Even if

true, his willingness to accept the money was corrupting.  His consciousness of

guilt is reinforced by his awareness that Rivers took a number of steps to hide

Milton's role in the sale of Camp Brighton, including hiring a middleman to

accept the sales commission, then breaking up the payments into multiple checks

to avoid currency transaction reports to the IRS.

Mr. Milton violated his position of public trust by putting his own financial

enrichment ahead of the interests of the citizens of the city.[1]  Given the potential

financial rewards, other public servants and municipal contractors may be tempted

to engage in similar behavior.  Accordingly, there is a need for a sentence that is

sufficient to instill public confidence in the rule of law and to deter others from

committing similar misconduct.  Deterring Milton, himself, from similar

misconduct in the future should not be a significant factor in his sentence,

however, because the government does not believe he will do so again.

---

[1]  It should be noted, however, that the government and the probation
department have not obtained reliable information that Camp Brighton could have
been sold for a higher price if not for the bribes.  As a result, the government cannot
prove by a preponderance of the evidence that the city suffered an actual financial
loss from the sale, except that the portions of the commission illegally diverted to Mr.
Milton and his brother could have been added to the purchase price of the property.

**D.      Kinds of Sentences Contemplated by the Sentencing Guidelines**

As part of Mr. Milton's plea agreement, the parties agreed that the correct calculation of his sentencing guidelines range of imprisonment is 37 to 46 months. The probation department concurs with this calculation.

**II.      Motion for Downward Departure for Substantial Assistance**

In a motion filed at the same time as this memorandum, the government requested that the Court grant a downward departure from Mr. Milton's guidelines range of imprisonment because of his substantial assistance in the investigation of other criminal conduct.

The government contacted Mr. Milton in January 2009 regarding the Synagro sludge scandal.  The government came back to him again in June 2009, confronting him with evidence the government had recently obtained about his role in the sale of Camp Brighton.  At this juncture, Milton, accompanied by his attorney, agreed to discuss the basic contours of the bribery scheme involving the sale of the camp.  He also volunteered his participation in two other instances of misconduct previously unknown to the government.  Finally, he agreed to cooperate in the investigation and prosecution of others engaged in criminal misconduct.  The government has questioned Milton on numerous occasions.  His

6

statements have been reliable and credible, corroborated both by other witnesses

and records.

Accordingly, the government requests that the Court depart downward to

reduce Mr. Milton's potential imprisonment to a range not more than 18 to 23

months, representing a fifty percent departure from his original guidelines range of

imprisonment.

**III.    Avoiding Unwarranted Sentence Disparities**
**Among Similarly Situated Defendants**

In considering the appropriateness of the government's recommended

sentence, the Court must seek to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar crimes.  In

this regard, there are two categories of defendants to evaluate:  Mr. Milton's

co-defendants and similarly situated defendants in other cases.  Each will be

described, below.

**A.    Co-Defendants**

There are a number of factors distinguishing Mr. Milton's potential sentence

from that of his co-defendants.  Unlike DeDan Milton, who was sentenced to

42 months in prison, Kandia Milton qualifies for a downward departure from his

guidelines range of imprisonment because of his substantial assistance in the

investigation of other criminal conduct.  As described above, Milton admitted his

guilt after being confronted by the government with evidence of his guilt and

agreed to cooperate.  His brother DeDan, by contrast, was approached by law

enforcement agents, but declined to accept responsibility for his role in the

offenses until after a federal grand jury indicted him on five counts of bribery and

extortion.  Jerry Rivers, who was sentenced to 12 months and a day in prison,

provided substantial assistance to the government like Milton.  Rivers's original

guidelines range of imprisonment was 30 to 37 months, however, two levels lower

than Milton's because Rivers was not acting as a public official when the bribery

crimes were committed.[2]

### B.      Similarly Situated Defendants

The Court also should consider other similarly situated defendants in the

government's recent prosecutions related to local corruption.  The cooperating

public officials convicted so far in that effort received sentences ranging from

18 months for William Lattimore, a Southfield city council member who accepted

$25,000 to support relocation of a pawnshop; 14 months for Efstathios Louis

Pavledes, the former director of Cobo Civic Center who received and structured

---

[2]  It should be noted, however, that Rivers obtained the most money from the sales of Camp Brighton and the 8th Precinct police station, receiving $32,000, while Kandia Milton received $25,250, and DeDan Milton received $16,250.

$90,000 in payments for maintaining a vendor's contracts; and 12 months for

Glenn Blanton, another former Cobo director who took $15,000 from a city

vendor.

The sentences of each of these defendants is not precisely comparable

because each involved different circumstances in terms of the amount of evidence

the government possessed before the defendants cooperated and the value of

cooperation the defendants provided following their convictions.  That said, these

sentences provide a rough range of punishments for public officials who, like

Mr. Milton, accepted responsibility for their crimes and cooperated against others.

In light of these sentences, a range of imprisonment of no more than

18 to 23 months for Mr. Milton is reasonable and just.

## **CONCLUSION**

Based on the foregoing, the government recommends that the Court grant

the government's motion for a downward departure based on Mr. Milton's

substantial assistance and sentence him to a term of prison not more than 18 to

23 months, followed by two years of supervised release.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney


s/MARK CHUTKOW                            s/R. MICHAEL BULLOTTA
Assistant United States Attorney          Assistant United States Attorney


Dated:  August 13, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2010, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send

notification of such filing to the following:

Elliott S. Hall                                      Hugh M. Davis
Dykema Gossett PLLC                                  Constitutional Litigation Associates,
400 Renaissance Ctr                                  P.C.
Detroit, MI  48243                                   450 W. Fort St., Ste 200
*Attorney for Kandia Milton*                         Detroit, MI 48226
                                                     *Attorney for Kandia Milton*

s/MARK CHUTKOW
Assistant U. S. Attorney

Dated:  August 13, 2010